THE COURT were unanimously of opinion, that the direction to the jury, on the first point, was correct ; but reversed the judgment, CHESTER, BRACE, E. GOODRICH, and HOSMER, *Assts.* dissenting, on the ground, that it ought to have been left to the jury, as a question of *fact* for them to decide, whether the whole transaction was, or was not, a cover for usury.

1807.

KENT
*v.*
PHELPS.

## Hyde *v.* Tracy.

### In the Court below,

ELISHA TRACY, *Petitioner ;* ELISHA HYDE, URIAH TRACY, EBENEZER THOMAS, SIMEON THOMAS, JOSEPH COIT, DANIEL TILDEN, ASAHEL CLARK, and ZACHARIAH CHAPMAN, *Respondents.*

THIS case being called on to be argued, *Hyde*, one of the plaintiffs in error, moved to withdraw the writ of error.

*Ingersoll* and *A. Spalding*, for the rest of the plaintiffs in error, did not object to *Hyde's* withdrawing *for himself*; but contended, that this act of his should not affect the rights of *the rest ;* that the case should still proceed to trial between *them* and the defendant in error. It was necessary, that all the parties to the suit below should be made parties to the writ of error ;(*a*) and in England, the practice is, if any one or more of them refuse to appear, and assign errors, to summon them in, and obtain a judgment of severance against them ; after which the writ of error may be proceeded in without them.(*b*) But no practice of summons and severance has been adopted in this state ; nor is any such practice necessary. After one of the plaintiffs has made

Where one of several plaintiffs in error, against whom a decree had been made in the court below, moves to withdraw the writ of error without the consent of the rest, the *retraxit* of the person making the motion will be entered on the record, and the cause proceed as between the rest and the opposite party.

(*a*) 2 *Sel. Prac.* 536, *Dub. edit.* 2 *Tidd's Prac.* 1053, 4, *enlarged edit.* 3 *Burr,* 1789, *Knox* v. *Costello.*

(*b*) 6 *Rep.* 25, *Ruddock's case.* 6 *Bac. Abr.* 403, *Gwil. edit.*

1807.

HYDE
*v.*
TRACY.

default of appearance, or has moved to withdraw, an entry thereof is to be made on the record, and then the case is to proceed as in England after judgment of severance.

*Daggett*, contra, contended, that the non-suit of one was the non-suit of all, except in those cases in which judgment of severance might be had; but that there could be no judgment of severance in *personal* actions; (*c*) nor in any case, wherein the persons who have joined might have had separate actions. (*d*) There was no necessity of joining *Hyde* in this writ of error. The court below, in making their decree, had respect to the *separate* interest of each of the defendants. One of them was satisfied with the decree as it respected himself. If the others were dissatisfied, they might bring a writ of error, without joining him.

BY THE COURT, unanimously, it was decided, that *Hyde* could not withdraw the writ of error, so as to prevent the other plaintiffs from proceeding with it as betweem them and the opposite party. The personal *retraxit* of *Hyde*, however, was ordered to be entered on the record. The case was then heard

## On the merits.

A. B. and C. with seven other persons, made a purchase, and gave their joint bond. All signed as the securities of each, though they were severally to

It was a petition in chancery, praying for the interposition of the court, under the following circumstances: On the 3d of September, 1795, the petitioner and respondents, with *Jacob Ogden*, executed their joint bond to the treasurer of the state, conditioned for the payment of the sum of

(*c*) 6 *Rep.* 25, *Ruddock's case.* 6 *Bac. Abr.* 404, *Guil. edit.*
(*d*) *Ibid* 403.

pay different shares of the amount. A. became bankrupt, before payment of his share. B. then paid one ninth part of A.'s share, and a small sum over; after which B. brought a bill in chancery against the other co-obligors, for a contribution. The court decreed, that each of the respondents to that bill should pay to the obligee one ninth part of the loss arising from the bankruptcy of A. and also pay to the complainant one eighth part of the surplus advanced by him.

It is no objection to such decree, that the obligee of the bond was not made a party to the suit.

$57,400, with interest payable annually, from the 1st of September, 1797 ; which bond was given for land in the Connecticut Western Reserve, purchased of the state. Of the principal and interest, it was the duty of the petitioner to pay $10,500 ; it was the duty of *Ogden* to pay $9,400 ; it was the duty of *Clark*, *Chapman* and *Tilden* to pay $3,600 ; and it was the duty of the other respondents to pay the residue, but in unequal proportions ; the several persons mentioned being interested in the original purchase to the amount which it was the duty of each respectively to pay. The petitioner and the respondents all signed the bond, at the request of *Ogden*, as his securities, for the payment of his share ; which, at the time of executing the bond, they all considered him to be of sufficient ability to pay ; but before the same became due, and before any part was paid, he became bankrupt, and was discharged from the payment of his debts, by an act of insolvency ; by means of which, the whole sum devolved on his sureties as a total loss. Of this loss, the petitioner had paid one ninth part, and $333 34 over ; *Clark*, *Chapman* and *Tilden*, had paid $542 ; the residue, owing to a dispute among the co-obligors as to the amount which each ought to pay, remained unpaid. A suit had been commenced, and judgment rendered, against the petitioner alone, for the whole sum due on the bond, which he was unable to pay, and its collection against him alone would be very injurious, if not ruinous. After finding these facts, the court further found, that according to the nature and terms of the original contract between the parties, it was the duty of each to pay one ninth part of the loss arising from *Ogden's* bankruptcy ; and thereupon decreed, that each of the respondents should pay to the treasurer such ninth part, and also pay to the petitioner one eighth part of the sum advanced by him beyond his proportion.

*Ingersoll* and *A. Spalding*, for the plaintiffs in error, took three exceptions to the decree.

1. That it subjected all the respondents to an *equal* share

1807.

HYDE
v.
TRACY.

of the loss arising from *Ogden's* insolvency ; whereas they were not his sureties merely, but were co-obligors with him in a bond for a joint purchase, in which they were interested in *unequal* shares ; and ought, therefore, to be subjected *in proportion to their respective interests.*

2. That if the petitioner was entitled to an equal contribution from all the co-obligors, he ought to have sought it at law, and not in chancery. Had he claimed, that they ought to contribute in *different* proportions, he might, indeed, have applied to a court of chancery to settle the proportions of each ; but, on the ground that they were all liable equally, the legal remedy would be adequate. Besides, the petitioner was premature in his application ; for he had not paid the money.

3. The decree, from its nature, cannot be final. It directs a sum of money to be paid to the treasurer of the state, who is not a party to the suit, under a penalty to the petitioner. Payment of the penalty to the petitioner would not conclude the state.

*Daggett* and *Goddard,* for the defendant in error, contended,

1. That as it appeared from the record, that the petitioner and respondents all signed the bond, at the request of *Ogden,* as his securities ; the correct inference of law is, that each must pay an equal share of the loss.

2. That chancery interferes, not merely where there can be no remedy at law, but where such remedy, under all the circumstances of the case, will not meet its exigencies. In this case, it might ruin the petitioner, to pay the whole, and then go to law for a contribution. In Great-Britain, it is the constant practice to go into chancery to obtain a contribution.

1807.

HYDE
v.
TRACY.

3. That it would have been useless to make the treasurer a party. He could not be compelled to give a discharge, until the whole sum due on the bond should have been paid. The court below have done all that, *at present*, they can do; and it can never be an objection to a decree, that it does not provide for every future contingency.

BY THE COURT, unanimously,

The judgment was affirmed.

## Lewis *v* Hawley.[*]

In the Court below,

ISAAC HAWLEY, *Plaintiff*; WALKER LEWIS, *Defendant*.

THIS was an action of slander.

The declaration alleged, that the plaintiff, for more than twenty years, had exercised the trade and business of a drover, and purchaser and packer of provisions, and had been in the constant practice of purchasing large droves of cattle on credit, and for ready money, and driving them to market, and then selling the same, by which he made great profit and gain : That the defendant, in the hearing of diverse good people of this state, uttered and published, of and concerning the plaintiff, the following malicious, false, and defamatory words, *viz.* " *Isaac Hawley*, is a bankrupt, and is " not able to pay his just debts :" [with other words, charged in several counts, to the same effect.] And that, by means of which malicious, false and defamatory words, spoken and published, by the defendant as aforesaid, of and concerning the plaintiff, in his business, the plaintiff had been greatly injured therein, and his credit destroyed.

To say of a *drover*, whose business it is to purchase droves of cattle, drive them to market, and sell them, that he is a *bankrupt*, is actionable, without special damage being shewn.

A written answer to a motion in arrest is unnecessary.